

**ORDERED in the Southern District of Florida on October 29, 2015.**

Erik P. Kimball, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| In re: | CASE NO.: 12-39329-EPK |
| VICOR TECHNOLOGIES, INC. | CHAPTER 7 |
|     Debtors._____/ | |
| MARGARET J. SMITH, Trustee in Bankruptcy for Vicor Technologies, Inc., | |
|     Plaintiff, | |
| v. | ADV. NO.: 14-01874-EPK |
| DAVID FATER, | |
|     Defendant._____/ | |

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court upon the *Defendant's Motion for Summary Judgment* (the "Motion for Summary Judgment") [ECF No. 13] filed by David Fater, and upon the *Plaintiff's Response to Defendant's Motion for Summary Judgment* (the

1

"Response") [ECF No. 18] filed by Margaret J. Smith, Trustee (the "Trustee") and the *Defendant's Reply Memorandum in Support of Motion for Summary Judgment [D.E. 13]* [ECF No. 19] (the "Reply"). The Court, having considered the Motion for Summary Judgment, the Response, the Reply, the record in this adversary proceeding, and the record in the underlying Chapter 7 case number 12-39329-EPK, grants the Motion for Summary Judgment for the reasons stated below.

I.   Background

The following facts are not in dispute.

Vicor Technologies, Inc. (the "Debtor") was formed in 2000 for the purpose of developing and marketing medical diagnostic products. It raised significant capital over the next 11 years for research, development, manufacturing, marketing, and other purposes.

The Debtor hired Mr. Fater in 2002 to serve as its CEO. The Debtor paid Mr. Fater pursuant to an employment agreement which included an annual base salary of $150,000 plus reimbursement of reasonable expenses, among other benefits. The Debtor and Mr. Fater renewed this agreement annually with non-material changes until Mr. Fater resigned in 2011.

In 2007, the Debtor borrowed a total of $300,000 from Colonial Bank, N.A. As a condition of the loan, Mr. Fater gave to the bank certificates of deposit in that amount as collateral. The Debtor's board of director's authorized reimbursement of Mr. Fater's out-of-pocket costs associated with the transaction pursuant to the terms of his employment agreement. The Debtor did in fact reimburse Mr. Fater for such costs, which included

interest payments on personal debt incurred for the purchase of the certificates of deposit. These reimbursements ultimately totaled approximately $40,000.

Alda & Associates International, Inc. ("ALDA") is a consulting company that was at all relevant times owned and controlled by Mr. Fater. On January 1, 2007, the Debtor entered into a Professional Employer Organization ("PEO") service agreement with ALDA. Under the terms of that agreement, a number of the Debtor's employees, including Mr. Fater, became employees of ALDA. In exchange for ALDA's payment of salaries and benefits to the Debtor's employees, the Debtor paid to ALDA the actual costs of payroll, insurance, and other benefits incurred by the latter. ALDA leased the employees back to the Debtor, received no fees from the Debtor, and did not realize any profits from the arrangement. The ostensible purpose of this arrangement was to allow the Debtor to save on employee health benefits, among other costs, by taking advantage of ALDA's greater economy of scale.

ALDA was never officially licensed as a PEO by the state of Florida. However, licensing is not strictly required under Florida law.

By late 2010, litigation and potential insolvency threatened the Debtor's operations. In December of that year, the Debtor's board of directors formed a special committee to investigate alleged mismanagement by the Debtor's officers. The committee hired Richard E. Brodsky to investigate the Debtor and its officers, including their relationship to ALDA. Meanwhile, on December 31, 2010, the Debtor's PEO agreement with ALDA terminated.

On April 26, 2011, Mr. Brodsky produced a report (the "Brodsky Report"). With regard to ALDA, Mr. Brodsky described his task as follows:

> [to determine] (a) Whether the aggregate amount paid to ALDA by Vicor for salaries, health insurance, workmen's compensation insurance and

3

taxes equaled the amount paid by ALDA for these items. (b) Whether the individuals paid compensation by Vicor were being compensated for work that directly benefitted Vicor as opposed to some other entity.

Brodsky Report at 13-14.

Mr. Brodsky concluded that "the documentation and control procedures surrounding the payroll process were inadequate," but that "within acceptable limits of materiality, the amount of money paid by Vicor to ALDA for compensation and other payroll related expenses . . . equaled the amounts expended by ALDA for these purposes." Brodsky Report at 14. Mr. Brodsky noted that the "original rationale for leasing employees from ALDA (to save on health care costs) appears to have become substantially less valid as time went on." *Id.* at 15. "As of 2009 . . . there were no economies of scale whereby, by numbers alone, Vicor could 'leverage' the payroll of ALDA to realize health care savings." *Id.* Nevertheless, Mr. Brodsky found no significant wrongdoing in the continuation of the PEO arrangement. Specifically, Mr. Brodsky found "no extrinsic evidence" that the Debtor had paid to ALDA any funds due for services not benefitting the Debtor. *Id.* at 15-16.

In the course of Mr. Brodsky's investigation into the ALDA arrangement, he noted that "approximately $1,000,000 in non-salary payments were made by [the Debtor] to certain officers and directors." Brodsky Report at 17. In this regard, Mr. Brodsky stated:

> We did no investigation of the propriety of the payments or the accounting for them because it was not within the scope of the investigation and we were aware of no information indicating any impropriety. Nevertheless, in light of the amount of the expenses and the fact that some of these individuals were listed as ALDA consultants, the Committee may wish to recommend to the Audit Committee to inquire . . . as to the extent of audit procedures directed to these expenses.

*Id.* at 17-18. While Mr. Brodsky suggested that the Debtor's board of directors might investigate this concern further, he specifically stated that he was not aware of any

4

impropriety. Importantly for purposes of this case, there is nothing in the Brodsky Report to suggest that the separate payments made by the Debtor to certain of the same persons who were covered by the ALDA PEO arrangement were not appropriate.

In May, 2011 the Debtor ran out of cash. In December, 2011 the Debtor's management resigned due to pending litigation and disagreements with the company's board of directors. For the following year there was little activity of record within the entity. On December 7, 2012, 13 creditors, including members of the aforementioned management team, filed an involuntary bankruptcy petition. The Debtor contested the petition. This Court granted summary judgment in favor of the petitioners and, on April 8, 2013, the Court entered an order for relief in the above-captioned main case.

On December 5, 2014, the Trustee filed complaints against ALDA and three former officers of the Debtor [Case Nos. 14-01867-EPK, 14-01868-EPK, 14-01872-EPK, 14-01874-EPK] (collectively, the "ALDA Cases"). In each of the ALDA Cases, the Trustee alleged both actual and constructively fraudulent transfers by the Debtor. In this case, in short, the Trustee argues that various payments made to Mr. Fater were made with the actual intent to hinder, delay or defraud creditors, or that the Debtor did not receive reasonably equivalent value for such payments and the Debtor was insolvent at the time of the payments.

In August, 2015, each Defendant in the ALDA Cases moved for summary judgment on the grounds that there was no evidence whatsoever to support a finding of actual fraud and that the Debtor received reasonably equivalent value for all of the allegedly fraudulent transfers. In support of each summary judgment motion, the defendants attached copies of the various service agreements between themselves and the Debtor, as well as affidavits

5

and accounting records.  *See, e.g.*, Exhs. A-D to the Motion for Summary Judgment.  These exhibits attest to each defendant's assertion that all payments by the Debtor to its officers and to ALDA were non-duplicative.

In the Response to the Motion for Summary Judgment, the Trustee attached only three exhibits: the PEO agreement, an affidavit by Mr. Fater describing ALDA's relationship to the Debtor, and the Brodsky Report.  The Trustee cites the Brodsky Report to support her theory that the existence of multiple payment streams to certain of the Debtor's officers implies that the payment streams were duplicative.  Accordingly, the Trustee argues that the Debtor did not receive reasonably equivalent value for either or both payment streams.

In the Reply, Mr. Fater explains that the payments made to him by the Debtor directly were for reimbursement of reasonable expenses, pursuant to the terms of his employment agreement.  These expenses included interest payments on personal debt incurred for the purchase of certificates of deposit to collateralize the Colonial Bank loans to the Debtor, which were specifically approved by the Debtor's board of directors, as well as other unspecified expenses.  Mr. Fater provided affidavits and financial disclosures in support of this assertion.

II.    Summary Judgment Standard

Federal Rule of Civil Procedure 56, made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is appropriate if the Court determines that the "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant supports its

assertion that a fact cannot be disputed by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of meeting this standard. *Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party. *In re Pony Express Delivery Services, Inc.*, 440 F.3d 1296, 1300 (11th Cir. 2006).

III.   Analysis

The Trustee pled two counts of actual fraud. Count I, brought under 11 U.S.C. § 548(a)(1)(A), and also under 11 U.S.C. § 544(b) and Florida Statutes §§ 726.105(1)(a) and 726.108(1), concerns transfers made by the Debtor to Mr. Fater within a 2-year period preceding the filing of the bankruptcy petition. Count II, brought under 11 U.S.C. §§ 544(b)(1) and Florida Statutes §§ 726.105(1)(a) and 726.108(1), concerns similar transfers made within a 4-year period preceding the petition date. Counts I and II both require the Trustee to prove "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A); FS § 126.105(1)(a).

With regard to the claims based in actual fraud, the Trustee offered neither a

detailed rebuttal to the Motion for Summary Judgment nor any evidence to support Counts I and II of the complaint. It appears the Trustee conceded that the allegations in the complaint do not support a finding of actual fraudulent intent by the Debtor.

In any case, there is no genuine dispute as to whether the Debtor intended to defraud any party in connection with its payments to Mr. Fater. To begin with, the complaint here presents only bald assertions that the payments by the Debtor to the Mr. Fater were made with fraudulent intent. There are no specific allegations in the complaint which, if proven, would support such a finding. In contrast, the evidence provided by Mr. Fater, including financial records and affidavits of officers, is more than sufficient to negate any potential suggestion of actual fraudulent intent here.

Once a party seeking summary judgment offers evidence in support of its motion, the objecting party must come forward with contradictory evidence so that the Court may conclude a material fact is in dispute. On the claims based in actual fraud, the Trustee offered no evidence in rebuttal. None of her exhibits in any way supports the allegations in the complaint that the Debtor acted with actual fraudulent intent or otherwise controverts the evidence offered by Mr. Fater on this issue. Accordingly, the Court will grant the Motion for Summary Judgment as to Counts I and II.

The Trustee also pled two counts of constructive fraud. Count III, brought under 11 U.S.C. §§ 548(a)(1)(B), concerns transfers made by the Debtor to Mr. Fater within a 2-year period preceding the filing of the bankruptcy petition. Count IV, brought under 11 U.S.C. §§ 548(b)(1) and Florida Statutes §§ 726.105(1)(a), 726.106(1) and 726.108(1)(a), concerns similar transfers made within a 4-year period preceding the petition date. Counts III and IV each require the Trustee to prove that the Debtor did not receive reasonably equivalent

value in exchange for the transfers.

There is no genuine dispute as to whether the Debtor received reasonably equivalent value in exchange for the payments made to Mr. Fater. The evidence provided by Mr. Fater supports his assertion that the Debtor paid ALDA amounts essentially equal to ALDA's actual out-of-pocket expenses in satisfying the Debtor's own obligations to Mr. Fater with regard to base salary. The Debtor then directly reimbursed Mr. Fater for reasonable expenses incurred in performance of his duties as CEO, as contemplated in his employment agreement.

The Trustee does not offer any evidence to rebut Mr. Fater's well-supported argument that the Debtor received full value for the payments made to Mr. Fater. In fact, the Brodsky Report appears to directly controvert the Trustee's own argument. Although it exceeded the scope of the investigation commissioned by the Debtor's board of directors, Mr. Brodsky addressed payments by the Debtor directly to its officers, including payments to Mr. Fater. Mr. Brodsky found no impropriety; at most, he recommended further investigation. Brodsky Report at 17. Apparently, neither the Debtor nor, now, the Trustee conducted further investigation and the Trustee provides no evidence to support her suggestion that direct payments by the Debtor duplicated those made via ALDA.

The respondent to a summary judgment motion is "required to go beyond the pleadings in [its] own case and present competent evidence in the form of affidavits, depositions, admissions, and the like to show a genuine issue for trial." *Wright v. Farouk Systems, Inc.*, 701 F.3d907, fn. 8 (11th Cir. 2012) (citing *Celotex*, 477 U.S. at 324); cf. *In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010). Nothing offered by the Trustee places Mr. Fater's well supported assertions in dispute. The Court must conclude that the Debtor

9

received reasonably equivalent value for the transfers to Mr. Fater. Accordingly, the Court will grant the Motion for Summary Judgment as to Counts III and IV.

Finally, in Count V of her complaint the Trustee seeks relief under 11 U.S.C. § 550. Section 550 permits the Trustee to recover the amount or value of avoided transfers from the defendants. As the Court has determined to grant summary judgment on Counts I-IV, there is no longer a legal basis for Count V. The Court will dismiss Count V.

IV.     Conclusion

For the reasons stated above, and being otherwise fully advised in the premises, it is ORDERED and ADJUDGED that the Motion for Summary Judgment [ECF No. 13] is GRANTED. The Court will enter a separate final judgment in favor of the defendant.

###

Copies Furnished To:

Nathan Mancuso, Esq.

*Nathan Mancuso, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service with the Court.*